IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JEREMY K.**[1], <br><br>        Plaintiff, <br><br>    v. <br><br>**KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>        Defendant. | Case No. 2:21-cv-602-SI <br><br>**OPINION AND ORDER** |

Ari D. Halpern, HALPERN LAW GROUP PC, 629 OB Riley Road, Suite 100, Bend, OR 97703; and Chad Hatfield, HATFIELD LAW PLLC, 8131 W. Klamath Court, Suite D, Kennewick, WA 99336. Of Attorneys for Plaintiff.

Scott Erik Asphaug, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jacob Phillips, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Jeremy K. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for DIB on January 30, 2020, alleging disability beginning on March 1, 2017. AR 68. Plaintiff's date of birth is December 4, 1982, and he was 34 years old as of the

alleged disability onset date. AR 69. The agency denied his claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 142, 148, 153. Plaintiff appeared for a hearing before an ALJ in October 2020. AR 39. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 20-32. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous

       period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

    The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

As a preliminary step for Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2022. AR 22. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2017. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of posttraumatic stress disorder (PTSD), depression, anxiety disorder, insomnia, Baker cyst on his right knee, occasional headaches, and obesity. AR 23. At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b). Regarding postural abilities, the claimant has the ability to frequently (2/3 of the workday) balance, stoop (i.e., bend at the waist) and kneel, and occasionally (1/3 of the workday) climb ramps or stairs, crouch (i.e., bend at the knees), crawl or climb ladders, ropes or scaffolds. The claimant has no limitations regarding the ability to handle, finger or feel, reach in all directions, including overhead, see, hear or communicate. Regarding the environment, the claimant has no limitations.
>
> Regarding mental abilities, the claimant has the ability to understand, remember or apply information that is simple and routine commensurate with SVP 2.

>Regarding interaction with others, the claimant would work best in an environment in proximity to, but not close cooperation (i.e., teamwork), with co-workers and supervisors, and must work away from the public. The claimant does have the ability to interact appropriately with others.
>
>With legally required breaks, the claimant has the ability to concentrate, persist and maintain pace.
>
>Regarding the ability to adapt or manage; the claimant would work best in an environment that is routine and predictable, with goals set by others, low stress, not production or quota based. The claimant does have the ability to respond appropriately, distinguish between acceptable and unacceptable work performance; or be aware of normal hazards and take appropriate precautions.

AR 24-25. Based on these limitations, at step four, the ALJ found that Plaintiff could not perform his past relevant work. AR 30. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 31. The ALJ thus concluded that Plaintiff was not disabled. AR 32.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (a) failing to give effect to the Veterans Affairs' (VA) finding of disability; (b) discounting Plaintiff's symptom testimony; (c) discounting Dr. Stephen Adams' medical opinion; (d) not properly incorporating Dr. Stephen Condon's opinion into Plaintiff's RFC; and (e) failing to find Plaintiff disabled at step three. Each argument is addressed in turn.

### A.  VA Finding of Disability

Plaintiff argues the ALJ erred by failing to discuss the VA's finding that Plaintiff was 80 percent disabled. For claims filed after March 27, 2017, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether" the claimant is "disabled, blind, employable,

or entitled to any benefits." 20 C.F.R. § 404.1504. These new regulations override the Ninth Circuit's requirement under the old regulations that an ALJ give weight to a VA's determination of disability. *See Underhill v. Berryhill*, 685 F. App'x 522, 524 n.1 (9th Cir. 2017) (Ikuta, J., dissenting) (noting that the new regulations "will overrule *McCartey*'*s* requirement that 'an ALJ must ordinarily give great weight to a VA determination of disability' or provide 'persuasive, specific, valid reasons for [giving less weight] that are supported by the record'" (alteration in original) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002))); *Dubord v. Comm'r of Soc. Sec.*, 2021 WL 2661879, at *3 (E.D. Cal. June 29, 2021) ("The new regulation appears to remove any requirement for an ALJ to discuss another agency's rating."); *cf Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (holding that the Commissioner's 2017 revised regulations relating to medical opinions "are clearly irreconcilable with our caselaw" and thus overrule previous Ninth Circuit standard). The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that the claimant puts into the record. 20 C.F.R. § 404.1504.

Because Plaintiff filed his claim for benefits after March 27, 2017, the new regulations apply. The ALJ therefore was not obligated to discuss the VA's finding of disability. The ALJ evaluated the evidence underlying the VA's decision, which complies with these new regulations. *See* AR 23 ("VAMC treatment records show the claimant to be cognitively intact."); AR 23-24 (discussing findings of "VAMC treating providers"); AR 26 (discussing the "minimal and mild physical examination findings . . . throughout the VAMC treatment records"); AR 27 (discussing findings of VA psychiatrist, Dr. Cynthia Holm); AR 28 (discussing "VAMC treatment records" that show symptom improvement).

PAGE 7 – OPINION AND ORDER

Plaintiff maintains, however, that these intervening regulations do not override Ninth Circuit precedent. Plaintiff's position is without merit. *See Woods*, 32 F.4th at 790 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."); *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) ("We hold that . . . where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.").

## B. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Here, Plaintiff argues that the ALJ erred by discounting his testimony about mental health symptoms based on improvement with treatment. A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms and with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017 (cleaned up). "The fact that a person suffering from depression makes some improvement does not mean that the person's impairment no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

As the Ninth Circuit explained in *Garrison*,

> It is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few

> isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

*Garrison*, 759 F.3d at 1017.

Plaintiff cites his own testimony at the hearing to show that his mental health symptoms have not improved. But when evaluating the persuasiveness of Plaintiff's testimony, the ALJ is not obligated to consider Plaintiff's testimony itself. In any event, Plaintiff only testified that he finds it difficult to go through trauma therapy because he has to "relive" some of the events that caused his PTSD. AR 55. This testimony does not conflict with the ALJ's finding that Plaintiff's mental health symptoms have improved with treatment. Plaintiff also cites the medical opinion and treatment notes of Dr. Adams to show that Plaintiff's symptoms have not improved. The ALJ was not obligated to consider the medical opinion of Dr. Adams, because as explained below, the ALJ properly rejected Dr. Adams' opinion. Thus, in looking at Plaintiff's record as a whole, including Dr. Adams' treatment notes, Plaintiff demonstrated consistent improvement with treatment for his anxiety, depression, and insomnia.

In December 2018, Plaintiff reported that he was "mildly depressed" with "considerable irritability" and "mild anxiety." AR 549. In February 2019, Plaintiff reported that his mood and irritability improved after resuming or increasing his dose of fluoxetine. AR 542. In October 2019, Plaintiff reported he was "sleeping much better on quietiepine" and that his anxiety and depression had initially improved while taking venlafaxine but that the anxiety and depression had gotten worse in recent weeks due to his wife's experience with anxiety and depression. AR 517. In February 2020, Plaintiff and his wife reported that Effexor XR, a brand of venlafaxine, was "not helping at all" with Plaintiff's anxiety and depression and that Plaintiff was still experiencing insomnia. AR 515. In March 2020, Plaintiff reported that Paxil was "much better" than Effexor XR and that his mood was getting better. AR 802. Plaintiff also stated,

PAGE 11 – OPINION AND ORDER

however, that there was "still some room for improvement" and requested to increase his dose of Paxil and stated he was willing to increase his dose of Buspar. *Id.* In May 2020, Plaintiff reported that the increase in Buspar did not help with his anxiety and that his sleep had gotten worse. AR 799. In June 2020, Plaintiff reported that after getting off Buspar and taking clonidine and quietiapine, his sleep had improved again although it still "wasn't perfect" and that he had been feeling irritable during the day. AR 811. In July 2020, Plaintiff reported that his medication "definitely helped" with insomnia and that his mood had improved but noted that there was "still some room for improvement" in his mood. AR 808.

Viewing Plaintiff's treatment records as a whole, Plaintiff's anxiety, depression, and insomnia have demonstrated consistent improvement with medication. Although certain dosages and combinations of medications have caused symptoms to temporarily worsen, Plaintiff's treatment notes document that his medical providers have adjusted his medication accordingly. Substantial evidence therefore supports the ALJ's conclusion that Plaintiff's mental health symptoms improved with treatment. Further, the ALJ accounted for any remaining mental health symptoms by limiting Plaintiff to simple and routine tasks, no close cooperation with others, no interaction with the public, and a routine and predictable work environment. AR 24-25. Thus, the ALJ did not err by discounting Plaintiff's symptom testimony.

**C. Medical Opinion Evidence**

Plaintiff filed his application for benefits on March 1, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state

that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F. 4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to

such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### 1. Dr. Adams

In a check-box form, Dr. Adams opined that Plaintiff had marked or severe limitations in 20 out of 24 mental activities such as his ability to understand instructions and follow routines. *See* AR 834-36. Dr. Adams also opined that Plaintiff would be off-task more than 30 percent of the week and would be absent from work more than four days per month. AR 837. The ALJ rejected these opinions because they lacked an adequate explanation and were contradicted by Plaintiff's medical record, Dr. Adams' own treatment notes, and the medical opinion of Dr. John Nance. AR 29-30. Substantial evidence supports the ALJ's conclusion. For example, Dr. Adams opined that Plaintiff's ability to set realistic goals or make plans independently of others was severely limited, but in his treatment notes, Dr. Adams repeatedly noted that Plaintiff had fair insight and judgment and that he was "goal-oriented." *See* AR 736, 799, 800, 803, 808, 811. Additionally, Dr. Adams' opinion conflicts with that of Dr. Nance, who opined that Plaintiff only had mild limitations in his concentration, persistence, and pace. AR 46. Dr. Nance also opined that Plaintiff would be able to work eight hours per day, five days per week so long as he could accommodate limitations such as not interacting with the public. AR 47. Substantial evidence supports the ALJ's conclusion that the record conflicts with Dr. Adams' findings of disabling mental limitations.

### 2. Dr. Stephen A. Condon

The ALJ found Dr. Condon's opinion persuasive, but Plaintiff argues that the ALJ failed to fully incorporate Dr. Condon's opinion into his RFC. Plaintiff points to Dr. Condon's opinion that Plaintiff had "moodiness and temper issues" at work in the past and has "mild cognitive

problems and marked interpersonal problems in an employment situation." AR 828. Plaintiff argues that because the Vocational Expert (VE) testified that three instances of responding inappropriately to instruction to a supervisor renders an individual unemployable, Plaintiff is unemployable considering Dr. Condon's opinion. *See* AR 65-66 (VE testimony). Dr. Condon did not, however, opine that Plaintiff in all work settings would be unable to respond appropriately to instruction from a supervisor. The ALJ incorporated Dr. Condon's opinion about Plaintiff's interpersonal limitations by limiting Plaintiff to no close cooperation with others, no interaction with the public, and a routine and predictable work environment. AR 24-25. The ALJ did not err in evaluating Dr. Condon's opinion.

**D.   Step Three Finding**

Plaintiff argues that the ALJ's conclusion that Plaintiff has a marked limitation in interacting with others conflicts with the ALJ's formulation of Plaintiff's RFC. Plaintiff, however, does not explain this conflict and the Court does not identify any conflict. Plaintiff also argues that the ALJ erred in considering the "paragraph C" criteria by not incorporating the opinion of Dr. Adams. But as explained above, the ALJ did not err in rejecting Dr. Adams' opinion. Thus, substantial evidence supports the ALJ's step three finding.

**E.   Step Five Finding**

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the RFC posed to the VE did not incorporate limitations included in Plaintiff's testimony and Dr. Adams' opinion. Because the Court has concluded that the ALJ committed no harmful error in rejecting those opinions and testimony, substantial evidence supports the ALJ's step five finding.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act.

**IT IS SO ORDERED**.

DATED this 8th day of June, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge